# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MELISSA AKAR BENJAMIN,

    *Plaintiff*,

  v.

ROSENBERG & ASSOCIATES, LLC,

    *Defendant*.

Civil Action No. 19-3012 (RDM)

## MEMORANDUM OPINION AND ORDER

  This case presents a fact pattern that has become a familiar one in federal courts: Plaintiff Melissa Akar Benjamin—a defendant in a foreclosure action—has sued the loan servicer, financial services provider, and debt collection law firm that pursued the foreclosure action against her. She claims that these entities made repeated misrepresentations in an attempt to collect on her debt or obtain a foreclosure and, in so doing, violated multiple federal and District of Columbia laws.

  Benjamin initially alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*; the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*; the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*; the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; the Mortgage Lender and Broker Act, D.C. Code § 26-1101 *et seq.*; and the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.* Dkt. 1 (Compl.); Dkt. 23 (Am. Compl.). As the litigation proceeded, however, she voluntarily dismissed her claims against the loan servicer and financial services provider, Dkt. 29; Dkt. 33, leaving only her FDCPA claims against the law firm, Rosenberg & Associates ("R&A"), to be resolved. Meanwhile, in the underlying foreclosure action, the parties have stipulated to a

voluntary dismissal.  Praecipe of Dismissal, *Wilmington Sav. Fund Soc'y, FSB v. Benjamin*, 2016 CA 008365 R(RP) (D.C. Super. Ct. Sept. 16, 2020).

This matter is before the Court on R&A's motion to dismiss for failure to state a claim, Dkt. 25, which Benjamin opposes, Dkt. 32.  Although only one count of the complaint is directed at R&A, that count includes several distinct claims under the FDCPA.  For the reasons explained below, the Court concludes that Benjamin lacks standing to pursue some of those claims, that others fail as a matter of law, but that two claims may proceed beyond the pleadings.  The Court will, accordingly, **GRANT** in part and **DENY** in part R&A's motion to dismiss.

## I.  BACKGROUND

### A.  Factual Background

The following facts derive from Benjamin's complaint, documents incorporated into the complaint, and matters of which the Court may take judicial notice.[1]  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Savignac v. Jones Day*, 486 F. Supp. 3d 14, 24 (D.D.C. 2020).

Benjamin owns a property in northeastern Washington, D.C., and has lived there for more than 30 years.  Dkt. 23 at 2 (Am. Compl. ¶ 6).  In September 2009, she refinanced her property and signed a promissory note ("note") and deed of trust ("deed") in exchange for a loan of $226,597.00 from the lender Village Capital & Investment.  *Id.*; Dkt. 32-4; Dkt. 32-5.  Several different entities claimed an interest in the loan in the ensuing years and played a role in the

---

[1]  Because the referenced court filings are public records the authenticity of which is not disputed, the Court may take judicial notice of these records to reconstruct the course of the litigation.  *Mushala v. US Bank, Nat'l Ass'n*, No. 18-cv-1680, 2019 WL 1429523, at *3 n.3 (D.D.C. Mar. 29, 2019).  The Court does not, however, rely on factual representations in these filings for the truth of the matters asserted.

foreclosure action that followed.  In 2011, Wells Fargo, claiming to have acquired both servicing rights and ownership of the loan, declared the loan in default.  Dkt. 23 at 2 (Am. Compl. ¶ 7).  Three years later, in 2014, Selene Finance LP ("Selene"), a subsidiary of Selene Holdings LLC, acquired the right to service the loan.  *Id.* (Am. Compl. ¶¶ 4, 8).

In November 2016, R&A filed a foreclosure action on behalf of Christiana Trust—a division of Wilmington Savings Fund Society, FSB ("WSFS")—as trustee for Sunset Mortgage Loan Trust, Series 2014-2.  Dkt. 32-1 (Compl. for Judicial Foreclosure); Dkt. 23 at 3 (Am. Compl. ¶ 9).  The foreclosure complaint, which was verified by a corporate representative, represented that the named plaintiff was "the beneficiary of [the] Note secured by [Benjamin's] property."  Dkt. 32-1 at 2.  Subsequently, R&A filed a motion to substitute, which affirmed that "[a]t the time the . . . [foreclosure action] was filed, Christiana Trust was the proper [p]laintiff" but that, "[through a series of assignments, Christiana Trust [had] transferred its rights and interest in the Note and Deed of Trust . . . to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as trustee for Normandy Loan Trust, Series 2017-2."  Dkt. 32-2 at 1.  R&A, accordingly, asked to substitute Wilmington Savings Fund Society at the named plaintiff, "in lieu of Christiana Trust," *id*. at 2; *see also* Dkt. 23 at 4 (Am. Compl. ¶ 14), and the Superior Court granted that motion on May 25, 2018, Dkt. 26-1 at 4.

In the early stages of the foreclosure lawsuit, a foreclosure sale seemed likely.  WSFS filed a verified complaint at the beginning of the foreclosure action, representing that it held the note to Benjamin's loan and, as beneficiary of the deed, had the right to foreclose.  Dkt. 32-1 at 2; Dkt. 23 at 3 (Am. Compl. ¶ 10).  After WSFS filed the foreclosure action, Benjamin sought to conduct a short sale on the property.  Dkt. 23 at 3 (Am. Compl. ¶ 12).  These attempts failed.  *Id.* According to Benjamin, she "abided by all of Defendants' requirements and found several

buyers who submitted contract[s], but Defendants caused the contracts . . . to fall through by, among other things, not acting on the contracts and not communicating with" Benjamin to explain why. *Id.* Benjamin also attempted to modify the terms of her mortgage payment plan by submitting a loss mitigation application to the loan servicer, Selene, on October 29, 2018. *Id.* at 5 (Am. Compl. ¶ 19). It is unclear when Selene received this application.

In July 2018, R&A filed a motion for summary judgment in the foreclosure action, and on October 31, 2019, the Superior Court granted summary judgment in favor of Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as trustee for Normandy Mortgage Loan Trust, Series 2017-2, and entered a decree for the sale of the property. Dkt. 26-1 at 4–5; Dkt. 26-2 (order granting summary judgment). Progress toward the foreclosure sale slackened, however, when, less than a month later, Benjamin obtained counsel and moved to alter or amend the Superior Court's order for summary judgment. Dkt. 23 at 4 (Am. Compl. ¶ 15); Dkt. 26-1 at 5. Benjamin argued that the order should be vacated because (a) R&A and WSFS "acted in bad faith with respect to . . . Benjamin's efforts to short-[sell] the property;" (b) R&A and WSFS "did not hold a face-to-face meeting prior to filing the foreclosure action;" and (c) R&A and WSFS "did not prove they were in possession of the [n]ote at the start of the foreclosure, or . . . at any point during the foreclosure." Dkt. 23 at 4 (Am. Compl. ¶ 15).

In December 2018, while Benjamin's motion to amend was pending, Benjamin's counsel sent the loan servicer, Selene, a letter claiming "that there were errors on [Benjamin's] account and request[ing] information on the account." Dkt. 23 at 4 (Am. Compl. ¶ 17). According to Benjamin, Selene did not respond adequately to this letter. "Selene did not conduct a reasonable investigation of [the] letter[,] . . . failed to make required corrections[,] and failed to provide all of the information that [Benjamin's counsel] requested." *Id.* Benjamin contends that "Selene

4

did not provide th[is] information because . . . the information . . . would establish that Selene had no right to collect the debt, Selene had no right to foreclose, and Selene had assessed amounts on the account that were illegitimate." *Id.* at 4–5 (Am. Compl. ¶ 17).  Benjamin avers that, as a result, she "was charged with interests, fees, costs[,] and other charges that should not have been applied to the account." *Id.* at 4 (Am. Compl. ¶ 17).  In the same month, Benjamin's counsel also requested a copy of the note from Selene. *Id.* at 5 (Compl. ¶ 20).  Selene provided the note, but it was endorsed to the United States Department of Housing and Urban Development ("HUD"), rather than any of the foreclosing entities. *Id.*  Moreover, in January 2019, Selene allegedly advised Benjamin that Normandy Mortgage "had [held] no rights in [her] debt [since] July 2018." *Id.* (Compl. ¶ 18).

On February 22, 2019—while Benjamin's motion to alter or amend the Superior Court's judgment and decree was still pending—"R&A, at the behest of Selene," sent notice of a scheduled foreclosure sale to Benjamin. *Id.* (Am. Compl. ¶ 19).  Benjamin's attorney responded by warning Selene that the foreclosure sale was illegal because (1) Benjamin's loss mitigation application had not been processed, as required by RESPA; (2) the note that Selene had provided to Benjamin's counsel was endorsed to HUD, not any of the foreclosing entities; and (3) Selene had represented that the trust for which WSFS was acting as trustee, Normandy Mortgage, no longer had any interest in Benjamin's debt. *Id.* (Am. Compl. ¶ 20).  When contacted by Benjamin's counsel, Selene confirmed that it had received the letter, as well as Benjamin's loss mitigation request in October 2018, despite not responding to the latter, but it "would not agree to cancel the foreclosure sale." *Id.* (Am. Compl. ¶ 21).

After the parties finished briefing the motion to alter or amend, the Superior Court granted Benjamin's motion on March 19, 2019, and vacated the foreclosure order to "allow[] the

issues presented in [Benjamin's] [m]otion to be more thoroughly explored." Dkt. 26-3 at 2; Dkt. 23 at 6 (Am. Compl. ¶ 22); Dkt. 26-1 at 5. [2]  Benjamin subsequently filed a motion to dismiss based on the same arguments she had raised with WSFS and Selene: "(a) Defendants were not in possession of the [n]ote at the commencement of the foreclosure action[;] (b) the copy of the [n]ote that Defendants were currently trying to enforce was endorsed to HUD and could not be enforced by Defendants[;] (c) Defendants failed to establish they were currently in possession of the original [n]ote[;] and (d) Selene admitted that Normandy Mortgage . . . ha[d] no current interest in the debt." Dkt. 23 at 6 (Am. Compl. ¶ 23) (emphasis omitted); Dkt. 26-1 at 6–7. WSFS opposed the motion to dismiss. Dkt. 32-3; Dkt. 23 at 6 (Am. Compl. ¶ 24).  Although Benjamin's complaint in the present action does not describe the outcome of that motion, the Superior Court docket shows that the court denied Benjamin's motion to dismiss in an oral ruling on July 19, 2019, after which the parties entered mediation. Dkt. 26-1 at 7.

Benjamin's complaint in this action offers only a few further details as to how the foreclosure proceedings unfurled while the parties were in mediation.  Evidently, the parties continued to debate which entity held the note to Benjamin's loan.  In a letter dated August 25, 2019, Benjamin's attorney informed Selene that an entity identified as SC Park Lane II claimed to have acquired the loan. Dkt. 23 at 7 (Am. Compl. ¶ 25).  On October 16, 2019, shortly after Benjamin filed her initial complaint in this case, Selene sent a letter to Benjamin's attorney that

---

[2]  Benjamin alleges that the Superior Court found that "the Defendants acted in bad faith." Dkt. 23 at 6 (Am. Compl. ¶ 22).  That allegation grossly misstates what the Superior Court actually held; it merely concluded that "the facts of this case reflect diligent efforts on the part of the [Benjamin] to resolve this matter" and that the motion to alter or amend should be granted to permit "the issues presented in [Benjamin]'s Motion to be more thoroughly explored." Dkt. 26-3 at 2.  At the end of the day, the Superior Court took no action to sanction R&A for any bad-faith conduct, and in an oral ruling the court denied Benjamin's motion to dismiss the foreclosure action for lack of standing. *See* Dkt. 26-1 at 7.

included a copy of the note in its possession endorsed to the Secretary of HUD.  Dkt. 23 at 7

(Am. Compl. ¶ 26).  In response, Benjamin's attorney requested that "Selene confirm that the

copy of the [n]ote it provided with its October 16th letter was accurate[] and also requested the

identity of the owner of the loan and the master servicer of the loan."  *Id.* (Am. Compl. ¶ 28).  On

January 2, 2020, Selene responded by identifying a trust called Aero Mortgage Loan Trust 2017-

1 as the owner of the note (rather than SC Park Lane II).  *Id.* (Am. Compl. ¶ 29).  Selene did not

confirm whether the copy of the note it provided was accurate.  *Id.*

**B.      Procedural Background**

        After Benjamin filed this action on October 8, 2019, R&A, Selene, and WSFS moved to

dismiss for failure to state a claim.  Dkt. 20; Dkt. 22.  Benjamin amended her complaint in

February 2020, adding further factual allegations but maintaining the same causes of action.

Dkt. 23; Dkt. 23-1.  In her amended complaint, Benjamin alleged that R&A and Selene violated

the FDCPA (Count One), Dkt. 23 at 7–9 (Am. Compl. ¶¶ 30–40); that Selene violated RESPA

(Count Two), *id.* at 9–13 (Am. Compl. ¶¶ 41–73); and that Selene and WSFS violated the Equal

Credit Opportunity Act (Count Three), the Truth in Lending Act (Count Four), the Mortgage

Lender and Broker Act (Count Five), and the District of Columbia Consumer Protection

Procedures Act (Count Six), *id.* at 13–18 (Am. Compl. ¶¶ 74–110).  The Court need not consider

most of these claims, however, because Benjamin voluntarily dismissed her claims against

Selene, Dkt. 29, and WSFS, Dkt. 33, in the summer of 2020.  Thus, only the claims against R&A

remain, and all of those claims are found in Count One of the amended complaint.[3]

        In Count One, Benjamin alleges that R&A violated the FDCPA in seven different

respects.  First, Benjamin alleges that Selene and WSFS are in fact the same entity, Dkt. 23 at 3

---

[3]  The Court will, accordingly, dismiss Counts Two through Six.

(Am. Compl. ¶ 9), and that R&A violated the FDCPA by bringing the foreclosure action in the name of WSFS, Sunset Mortgage Loan Trust, and Normandy Mortgage Loan Trust, "instead of using [R&A's and Selene's] own names in their collection of and/or attempts to collect on the debt," *id.* at 7 (Am. Compl. ¶ 32) (citing 15 U.S.C. § 1692e(14)).  Second, Benjamin claims that R&A unlawfully notified her directly of the foreclosure sale in February 2019, instead of through her lawyer, even though R&A "knew she [had been] represented by an attorney since November 28, 2018." *Id.* at 7–8 (Am. Compl. ¶ 33) (citing 15 U.S.C. § 1692c(a)(2)).  Third, she alleges that R&A "violated [the FDCPA] by threatening to sell [Benjamin's] property at a foreclosure sale when [the law firm] knew [it] had no right to conduct the sale." *Id.* at 8 (Am. Compl. ¶ 34) (citing 15 U.S.C. § 1692e(5)).  Fourth, she avers that R&A made misrepresentations to the Superior Court regarding Benjamin's attempted short-sale "so that [R&A and Selene] could foreclose on the [Benjamin's] [p]roperty and obtain a deficiency judgment against" her. *Id.* (Am. Compl. ¶ 35) (citing 15 U.S.C. § 1692e(10)).  Fifth, she alleges that R&A violated the FDCPA "by misrepresenting the legal status of the debt with respect to [the deed], HUD regulation, [and] RESPA loss mitigation requirements and the District of Columbia's requirement that Defendants have clean hands and act in good faith in the loss mitigation process." *Id.* (Am. Compl. ¶ 36) (citing 15 U.S.C. § 1692e(2)).  Sixth, Benjamin claims that R&A collected or attempted to collect amounts on the debt "that were illegal or unreasonable (i.e., foreclosure related costs and fees, etc. under the terms of the debt or District of Columbia law)." *Id.* (Am. Compl. ¶ 37) (citing 15 U.S.C. §§ 1692e(2), f(1)).  Finally, she alleges, with no explanation, that both Sunset Mortgage and Normandy Mortgage are "sham entit[ies]" that have either never existed or are defunct, *id.* at 3–4 (Am. Compl. ¶¶ 9, 14), and that R&A violated the FDCPA by "falsely representing that [Sunset Mortgage and Normandy Mortgage] were real

entities that ever had any rights in the debt, by falsely representing that there were valid allonges and endorsements on the [n]ote that authorized Defendants to foreclose, and [by] falsely representing a right to maintain the foreclosure action under the entity Normandy Mortgage . . . when Selene has openly acknowledged that Normandy Mortgage . . . has no present rights in the debt," *id.* at 8–9 (Am. Compl. ¶ 38) (citing 15 U.S.C. §§ 1692e(2), (10)).

Benjamin seeks several forms of relief.  She asks that the Court award $100,000 in actual damages (although that plea includes damages alleged not only in Count One, but in Counts Two through Six).  *Id.* at 18 (Am. Compl. Prayer for Relief).  She also seeks statutory damages under the FDCPA, attorneys' fees and costs, and any such other legal and equitable relief as the Court deems equitable and just.  *Id.*; *see* 15 U.S.C. § 1692k(a).

R&A moved to dismiss on March 6, 2020, Dkt. 25, and Benjamin opposed that motion on July 7, 2020, Dkt. 32.  Then, on July 27, 2020, Benjamin filed a motion for partial summary judgment, Dkt. 34, which the Court denied for failure to comply with the Court's standing order requirement that parties participate in a pre-motion conference, Minute Order (Aug. 5, 2020). On August 19, 2020, the Court held a status conference, at which the parties explained that "the Superior Court case[,] for the most part[,] ha[d] been resolved in a settlement" and that Benjamin would "pay the underlying loan on that case."  Hrg. Tr. (Rough at 3).  At that hearing, the Court stayed the case while Benjamin and R&A attempted to resolve their disputes.  Minute Entry (Aug. 19, 2020).  After those discussions and subsequent discussions did not resolve the parties' remaining dispute, Dkt. 36; Oct. 15, 2020 Hrg. Tr. (Rough at 11); Minute Entry (Oct. 15, 2020), the parties informed the Court that they wished to proceed with litigation, Dkt. 39.  The Court, accordingly, ordered that R&A file its reply, if any, on or before December 18, 2020.  Minute

Order (Dec. 11, 2020).  To date, R&A has failed to reply, leaving unaddressed those arguments raised for the first time in Benjamin's opposition.

## II.  ANALYSIS

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  When ruling on such a motion, the Court "must accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party."  *Gordon v. United States Capitol Police*, 778 F.3d 158, 163–64 (D.C. Cir. 2015); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (citation omitted).

### A.  Standing

Before turning to R&A's motion to dismiss, the Court must determine whether Benjamin has standing to bring her remaining claims, all of which arise from alleged violations of the FDCPA.  "To state a case or controversy under Article III, a plaintiff must establish standing."  *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011).  Demonstrating standing, in turn, requires that a plaintiff show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," *id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990)), and "the manner and degree

of evidence required" to support each element depends on the stage of litigation, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice."  *Id.*  But because "standing is not dispensed in gross," *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quotation marks and citation omitted), a plaintiff must "demonstrate standing for each claim [s]he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006), and "for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000).

"It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the rights to sue to a plaintiff who would not otherwise have standing."  *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997).  Thus, to establish standing, a plaintiff must show "a concrete injury even in the context of a statutory violation."  *Spokeo*, 136 S. Ct. at 1549.  "[C]ertain harms readily qualify as concrete injuries under Article III.  The most obvious are traditional tangible harms, such as physical harms and monetary harms."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  But "[v]arious intangible harms can also be concrete.  Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," including but not limited to "reputational harms, disclosure of private information, and intrusion upon seclusion."  *Id.*

Here, Benjamin argues that R&A's alleged violations of the FDCPA caused her "to endure damages including out-of-pocket costs, legal fees defending the illegal foreclosure, fear of losing the [p]roperty, worry about where her loved ones will live, anxiety about being kicked out and becoming homeless, very heavy stress, severe headaches and stomach aches, sleepless nights, eating disorders, excessive worry, and other mental and emotional distress."  Dkt. 23 at 9

(Am. Compl. ¶ 39).  R&A has not challenged Benjamin's standing, but because standing is rooted in Article III's requirements, the Court must "satisfy itself of its authority to hear the case." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179 (D.C. Cir. 1984).  At this stage in the litigation, "the Court must assume that [Benjamin] will prevail on the merits" for the purpose of evaluating standing.  *Env't Integrity Project v. McCarthy*, 139 F. Supp. 3d 25, 37 (D.D.C. 2015); *see TransUnion*, 141 S. Ct. at 2208 ("[a]ssuming that the plaintiffs [were] correct" on the merits for purposes of standing analysis).

This Court recently addressed standing to sue under the FDCPA in *Magruder v. Capital One, National Association*.  In that case, the plaintiff alleged, among other things, that the defendant violated the FDCPA by "falsely representing that a debt was owed" and that, as a result, he sustained "economic damages and emotional/mental distress damages, including . . . out-of-pocket expenses, fear, embarrassment, humiliation, frustration, anger, headaches, sleeplessness, [and] severe emotional and mental distress."  2021 WL 1999544, at *2, *4 (D.D.C. May 19, 2021).  As the Court explained, "[i]n assessing whether an emotional harm can satisfy the Article III injury-in-fact requirement, the Court must . . . consider both 'history and the judgment of Congress.'"  *Id.* at *5 (quoting *Spokeo*, 136 S. Ct. at 1549).  The Court observed:

> As to history, "it is instructive to consider whether an alleged intangible harm has [a] close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  And as to Congress, the Court must consider whether Congress has permissibly sought to "elevate to the status of legally cognizable injuries concrete de facto injuries that were previously inadequate in law," . . . or, instead, has impermissibly sought to "dispense with the constitutional baseline of a concrete injury in fact."

*Id.* at *3 (first quoting *Spokeo*, 136 S. Ct. at 1549, and then quoting *Hancock v. Urb. Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016)).  The Court then noted that Congress enacted the FDCPA, in part, to remedy "the suffering and anguish" that "unscrupulous debt collectors"

cause. *Id.* at *7 (quoting S. Rep. 95-382, at 2 (1977)).  And the Court further explained that the "intangible harm" of "being subjected to attempts to collect debts not owed" "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[:] . . . common-law unjustifiable-litigation torts." *Id.* at *8 (quoting *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691–92 (8th Cir. 2017)).

Here, as in *Magruder*, many of R&A's alleged violations of the FDCPA implicate the core kinds of harm that the Act sought to remedy.  Benjamin avers that R&A "threaten[ed] to sell [her] property at a foreclosure sale when [it] knew [that it] had no right to conduct the sale," Dkt. 23 at 8 (Am. Compl. ¶ 34); misrepresented its actions with respect to the short sale to obtain summary judgment and a decree for the sale of the property, *id.* (Am. Compl. ¶ 35); "misrepresent[ed] the legal status of the debt" despite failure to comply with its legal obligations in the loss mitigation process; *id.* (Am. Compl. ¶ 36); attempted "to collect amounts on the debt that were illegal or unreasonable," *id.* (Am. Compl. ¶ 37); and falsely represented that Sunset Mortgage and Normandy Mortgage "were real entities that ever had any rights in the debt," *id.* (Am. Compl. ¶ 38).  These actions, according to Benjamin, all violate the FDCPA's prohibition against using "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e; *see* Dkt. 23 at 8 (Am. Compl. ¶¶ 34–38).  Because this provision of the FDCPA seeks to remedy a harm closely related to one recognized at common-law (*i.e.*, wrongful-litigation torts); because "mental distress" falls squarely within the type of harm Congress sought to redress; and because she also alleges tangible harms (*i.e.*, interests, fees, and costs), her asserted injuries are sufficiently concrete to pass Article III scrutiny.

Benjamin's allegations stumble, however, with respect to two of her remaining FDCPA claims. First, Benjamin avers that "by using the names WSFS, Sunset Mortgage . . . and Normandy Mortgage . . . instead of using [R&A's and Selene's] names in [the] collection of and/or attempts to collect on the debt," Dkt. 23 at 7 (Am. Compl. ¶ 32), R&A violated 15 U.S.C. § 1692e(14), which prohibits debt collectors from using "any business, company, or organization name other than the true name of the debt collector's business, company, or organization" in the course of debt collection. But Benjamin offers no explanation as to how R&A's unremarkable decision to bring suit in the name of its client, rather than itself, caused her harm. Even assuming (solely for the sake of argument) that R&A violated FDCPA procedure by bringing suit in the name of its client, Benjamin's complaint does not allege any facts that plausibly show that the failure to add R&A as a plaintiff in the foreclosure action caused her some tangible harm, such as "out-of-pocket costs [and] legal fees," or any intangible harm, such as emotional distress. *Id.* at 8 (Am. Compl. ¶ 39). Moreover, applying the *Spokeo* framework, the Court is unaware of any common law analog for the "injury" Benjamin alleges—that is, the failure to join a law firm representing an opposing party, even a "debt collection law firm," Dkt. 23 at 2 (Am. Compl. ¶ 3), as a plaintiff.

Read liberally, Benjamin's complaint might fault R&A, not only for failing to bring the foreclosure action in its own name, but also for failing to bring the action in Selene's name. Such an allegation would presumably rest on Benjamin's contention that "Selene is operating under the name WSFS to foreclose on the [p]roperty," *id.* at 3 (Am. Compl. ¶ 9), and that the trusts on behalf of whom WSFS brought suit are "sham entit[ies] that either do[] not exist or [are] defunct," *id.* at 3–4 (Am. Compl. ¶¶ 9, 14). But even this generous reading of the complaint does not rescue her claim. Setting aside the wholly conclusory nature of Benjamin's

allegations, the Court cannot discern how omitting Selene from the caption of its complaint caused her any cognizable harm.  To be sure, bringing suit on behalf of a "sham entit[ies]" or, more precisely, on behalf of entities that do not own the loan at issue, could cause a cognizable injury, such as unnecessary litigation expenses or even emotional distress.  And, indeed, Benjamin alleges separate claims that assert just that injury, averring, for example, that R&A "falsely represent[ed] that Sunset Mortgage Loan Trust, Series 2014-2 was in possession and/or the holder of the Note at the time the foreclosure action was filed."  *Id.* at 8 (Am. Compl. ¶ 38).  Benjamin's complaint, however, fails to allege any factual basis that would support a plausible inference that R&A's failure to add Selene, the loan servicer, as a foreclosure plaintiff caused her to suffer a cognizable harm.  Such an injury might exist (at least in theory), but "[t]he plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the[] elements" of standing,  *Spokeo*, 136 S. Ct. at 1547, and Benjamin's complaint says nothing about any such injury.

Second, Benjamin alleges that R&A impermissibly communicated with her directly to notify her of the scheduled foreclosure sale.  According to Benjamin, R&A's action violated the FDCPA provision that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt."  15 U.S.C. § 1692c(a)(2); Dkt. 23 at 7–8 (Am. Compl. ¶ 33).  This claims is of dubious merit: R&A sent notice to Benjamin in compliance with the Superior Court's order—of which this Court takes judicial notice—directing that "[t]he Trustees [including the "Substitute Trustees"] mail notice of the time, place, and terms of the auction to all . . . owners of record[] and occupants[] by certified mail, return receipt requested and by first class main, no more than 30 days and not less than 10 days[] before the auction date."  Dkt. 26-2

at 5.  As a result, it is difficult to reconcile Benjamin's claim with the FDCPA's exception to the ban on direct communications where the communication is made with "the express permission of a court of competent jurisdiction." 15 U.S.C. § 1692c(a).

But even assuming for standing purposes that R&A's court-compelled notice constituted a violation of the FDCPA, Benjamin fails to allege any harm—tangible or intangible—that she suffered as a result of the alleged violation and fails to identify any redress the Court might grant. Receiving direct notice of a foreclosure sale from a debt collector in compliance with a court order, moreover, does not implicate the kind of abusive and deceptive debt collection practices that Congress targeted in the FDCPA, and it does not resemble any injury traditionally recognized at common law, such as invasion of privacy.  *See, e.g.*, *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341, 1347 (11th Cir. 2021).  As a result, Benjamin has failed to allege facts sufficient to supporting her standing to pursue this claim.

*   *   *

The Court will, accordingly, dismiss Benjamin's FDCPA claims relating to R&A's failure to bring the foreclosure action in its own name, or in Selene's name, and R&A's direct communication with Benjamin regarding the scheduled foreclosure for lack of Article III standing.

**B.      Failure to State a Claim**

Each of Benjamin's remaining FDCPA claims derives from 15 U.S.C. § 1692e, which includes three elements.  To recover, "[a] private plaintiff . . . must establish that: (1) the defendant is a 'debt collector[;'] (2) who took an action 'in connection with the collection of a[] debt[;'] and (3) the action violated the substantive proscriptions in [Section 1692e's] provisions."

*Mohamed v. Select Portfolio Servicing, Inc.*, 215 F. Supp. 3d 85, 95 (D.D.C. 2016) (quoting

*Lipscomb v. The Raddatz Law Firm, PLLC*, 109 F. Supp. 3d 251, 256 (D.D.C. 2015)).

R&A first argues that Benjamin's complaint fails to state a claim because it ignores the

first of these elements—*i.e.*, it contains "no factual allegations that Rosenberg is a debt collector

under the FDCPA." Dkt. 26 at 4. Although it is true that the complaint fails to use those precise

words—it does not allege that R&A is a "debt collector under the FDCPA"—it does allege that

"R&A is a debt collection law firm . . . that specializes in the collection of mortgage debts for

loan service[r]s and mortgage lenders." Dkt. 23 at 2 (Am. Compl. ¶ 3). For purposes of the

FDCPA, a "debt collector" is

> any person who uses any instrumentality of interstate commerce in
> any business the principal purpose of which is the collection of any debts, or
> who regularly collects or attempts to collect, directly or indirectly, debts owed
> or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Reasonably construed, Benjamin's complaint easily meets that standard.

The complaint alleges that R&A is engaged in the business of the collection of mortgage debts

owed or due to loan services and mortgage lenders. That conclusion, moreover, is consistent

with Supreme Court precedent, which recognizes that the FDCPA applies to lawyers who

regularly engage in debt collection, including through litigation. *Heintz v. Jenkins*, 514 U.S. 291,

294 (1995).

R&A does not dispute that Benjamin has alleged facts sufficient to satisfy the second

element of a Section 1692e claim—*i.e.*, that it took actions in connection with the collection of a

debt. This, then, leaves the third element: whether Benjamin has plausibly alleged that R&A

"violated the substantive proscriptions" of Section 1692e. In addressing this question, the Court

will consider each of Benjamin's remaining claims in turn.

1.   *Allegation that R&A Misrepresented Who Held the Note*

Benjamin claims that R&A falsely represented that Sunset Mortgage, and later Normandy Mortgage, "were real entities that . . . had . . . rights in the debt" in violation of 15 U.S.C. §§ 1692e(2) & 1692e(10).  Dkt. 23 at 8–9 (Am. Compl. ¶ 38).  R&A responds that (1) Benjamin "did not include any evidence to support her allegation that [R&A] misrepresented the identity of the noteholder;" (2) Benjamin "did not provide a copy of the allonges that she alleges are invalid or the documents that she contends do not contain valid endorsements;" and (3) Benjamin raised the issue in the underlying foreclosure case, and so the issue would more properly be decided by the Superior Court.  Dkt. 26 at 8.

Although Benjamin's pleadings are not the picture of clarity, she has alleged enough to survive a motion to dismiss as to this claim.  She alleges that R&A brought suit using a complaint verified by someone who "had no personal knowledge" of whether WSFS's associated trust held the note and who falsely represented that the trust Sunset Mortgage held the note.  Dkt. 23 at 3 (Am. Compl. ¶ 10).  On Benjamin's telling, neither Sunset Mortgage nor Normandy Mortgage (which was added to the foreclosure action in May 2018) held any rights in the note that was secured by her property.  Of course, merely alleging that a foreclosure plaintiff did not have standing to initiate a foreclosure action is not enough to state a claim under Section 1692e.  Several courts have held that a failure to "produce adequate proof" of the foreclosing entity's ownership of a debt does "not suffice to state a claim for *deceptive* conduct under the FDCPA." *Mushala*, 2019 WL 1429523, at *7 n.9 (emphasis added) (quotation marks and citation omitted); *accord Cooke v. Carrington Mortg. Servs.*, No. 18-cv-205, 2018 WL 6323116, at *5 (D. Md. Dec. 3, 2018) (citing cases).

But Benjamin has done more than allege a mere failure to prove the foreclosure plaintiffs' entitlement to foreclose:  she also alleges that, at various points during the pendency of the foreclosure action, "Selene and WSFS could not enforce the Note because it was endorsed" to another entity, *id.* at 7 (Am. Compl. ¶ 27); *see id.* (Am. Compl. ¶ 25), and that R&A continued to pursue the foreclosure action even after it was put on notice that they "had no right to foreclose on the [p]roperty," *id.* at 4 (Am. Compl. ¶ 16).  That is sufficient to state a claim under Section 1692e.  R&A's response that Benjamin failed to attach any supporting evidence is a matter for another time; at least at this stage of the proceeding, Benjamin had no obligation to proffer the evidence that she contends will eventually support these factual allegations.

Finally, the Court is unpersuaded that Benjamin's claim fails because she raised the same contentions in the foreclosure proceeding.  Dkt. 26 at 8.  To be sure, the Superior Court's consideration of the same contention in a prior proceeding might, under other circumstances, raise the specter of *res judicata* or collateral estoppel barring Benjamin's claims: this Court must "extend to [Superior Court] judgments the same preclusive effect those judgments would receive in the [District of Columbia]," *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 857 (D.C. Cir. 2015), and, under D.C. law, "a final judgment on the merits bars relitigation in a subsequent proceeding of the same claim between the same parties or their privies," as well as issues that were not actually litigated in the first action but that "ar[ose] out of the same cause of action" and "could have been litigated," *EDCare Mgmt., Inc. v. DeLisi*, 50 A.3d 448, 451 (D.C. 2012) (quotation marks and citations omitted).  An action "arise[s] out of the same cause of action" if it stems from "a common nucleus of operative facts," *Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999) (quotation marks and citation omitted), and, here, Benjamin's FDCPA claim—premised on the foreclosure plaintiffs' purported lack of standing and R&A's alleged misrepresentations to

19

the Superior Court—undoubtedly shares a common nucleus of operative facts with the claims and defenses litigated during the foreclosure action.  Indeed, by denying Benjamin's motion to dismiss, the Superior Court (at least arguably) rejected many of the same contentions Benjamin raises now in support of her FDCPA claims.  But any effort to invoke *res judicata* in this context faces an insurmountable obstacle: the foreclosure action in the Superior Court ended pursuant to a voluntary dismissal without prejudice, Praecipe of Dismissal, *Wilmington Sav. Fund Soc'y, FSB v. Benjamin*, 2016 CA 008365 R(RP) (D.C. Super. Ct. Sept. 16, 2020).  Under D.C. law, "[t]he crucial element of *res judicata* is a final judgment on the merits . . . and it is beyond dispute that a dismissal without prejudice does not determine the merits."  *Interdonato v. Interdonato*, 521 A.2d 1124, 1131 n.11 (D.C. 1987).

The Court will, accordingly, deny R&A's motion to dismiss Benjamin's FDCPA claim relating to R&A's allegedly false representations regarding the proper parties to the foreclosure action.

 2. *Allegation that R&A Misrepresented Aspects of the Short-Sale*

Benjamin also contends that R&A misrepresented events relating to her attempted short-sale, in violation of 15 U.S.C. § 1692e(10)'s prohibition against "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."  Dkt. 23 at 8 (Am. Compl. ¶ 35).  R&A responds that this claim should be dismissed because the complaint (1) "does not provide any facts or supporting documentation concerning [Benjamin's] attempt to complete a short sale;" (2) "does not allege that [the offered contracts she received] were for an amount acceptable to the noteholder, or that the noteholder ever agreed to a short-sale in the first place;" and (3) "does not include any factual allegations regarding what [R&A] allegedly misrepresented about the short-sale effort."  Dkt. 26 at 6–7.

20

Although her allegations are thin, the Court again concludes that Benjamin has pled sufficient facts to survive a motion to dismiss.  Benjamin alleges that "Defendants agreed to allow [her] to [conduct] a short-sale of the [p]roperty;" that she "abided by all of Defendants' requirements and found several buyers who submitted contract[s];" and that "Defendants caused the contracts . . . to fall through by, among other things, not acting on the contracts and not communicating with [Benjamin] [as to] the reason why."  Dkt. 23 at 3 (Am. Compl. ¶ 12).  Then, Benjamin alleges, "[a]fter sabotaging . . . Benjamin's efforts . . . R&A misrepresented to the Superior Court that it was . . . Benjamin's fault that the short-sale was not completed."  *Id.* at 4 (Am. Compl. ¶ 13).  According to Benjamin, these misrepresentations allowed "Defendants [to] obtain[] summary judgment on the false basis that the Defendants operated in good faith to process the short-sale and that Plaintiff failed to find an acceptable buyer."  *Id.*

The Court concludes that Benjamin has plausibly alleged a "false representation or deceptive means to collect or attempt to collect any debt," 15 U.S.C. § 1692e(10)—*i.e.*, that R&A misrepresented the short-sale process to the Superior Court in order to speed along the foreclosure proceedings.  Benjamin will have to provide far more detail to support her allegations in future phases of the litigation.  And her claim may face other obstacles as well.  For example, although the FDCPA applies to lawyers who regularly engage in debt-collection litigation, *Heintz*, 514 U.S. at 299, it is far from clear whether the Act dictates what a lawyer or party may, may not, or must say *to a court* in a foreclosure proceeding.  That question was not addressed in *Heintz*, which involved a letter that was sent *to the plaintiff* by litigation counsel for a bank, which allegedly included a false representation about the amount due on the debt.  *Id.* at 293.  Nor is the Court prepared to address that question in the present context, absent briefing

and argument from the parties.  For now, the Court merely rejects the arguments that R&A raised
in its motion to dismiss.

   The Court will, accordingly, deny R&A's motion to dismiss Benjamin's FDCPA claim
relating to R&A's purported misstatements and omissions about her efforts to consummate a
short sale.

   3.   *Allegation that R&A Misrepresented the Debt by Collecting Illegal Fees*

   Benjamin further alleges that R&A collected or attempted "to collect amounts on the debt
that were illegal or unreasonable (i.e.[,] foreclosure[-]related costs and fees)," Dkt. 23 at 8 (Am.
Compl. ¶ 37).  In doing so, she claims that R&A ran afoul of two provisions in the FDCPA:
(1) Section 1692e's prohibition against making false representations as to the "character, amount,
or legal status of any debt" or "compensation which may be lawfully received," 15 U.S.C.
§ 1692e(2), and (2) Section 1692f's prohibition against collecting "any amount (including any
interest, fee, charge, or expense incidental to the principal obligation) unless such amount is
expressly authorized by the agreement creating the debt or permitted by law," *id.* § 1692f(1).
R&A, for its part, argues that the complaint includes "no allegations that [it] . . . was actively
attempting to collect on any foreclosure[-]related costs and fees."  Dkt. 26 at 7.  To the extent the
allegation refers to the 2016 filing of the foreclosure action, R&A further argues, this claim is
time barred, and, to the extent it refers to the scheduled foreclosure sale, R&A was acting
pursuant to a valid court order.  *Id.* at 8.

   The Court agrees that Benjamin has not pled sufficient facts to support this claim.
Although Benjamin alleges that "Selene . . . failed to make required corrections" to her account
and that, as a result, she "was charged with interest, fees, costs and other charges that should not
have been applied to the account," Dkt. 23 at 4 (Am. Compl. ¶ 17), she does not allege that R&A

played any role in that alleged misconduct.  Moreover, to the extent that Benjamin intends to allege that R&A brought suit on behalf of the incorrect entities and thereby sought amounts not authorized by any valid note, that claim merely repeats the claim (which the Court has already permitted to proceed) that R&A misrepresented that its clients held the note to her debt.  Finally, to the extent Benjamin intends to allege that R&A sought to recover amounts such as interest or attorneys' fees that were unreasonable or beyond the scope of relief authorized by the loan documents, that claim cannot go forward because she has failed to allege any non-conclusory facts in support of that allegation.  As a result, her complaint does not "possess enough heft to show that [she] is entitled to relief," *Twombly*, 550 U.S. at 557 (quotation marks and alterations omitted).

Accordingly, the Court will dismiss Benjamin's FDCPA claim relating to R&A's alleged attempts to collect "illegal or unreasonable" fees or costs, *id.* at 8 (Am. Compl. ¶ 37).

4.    *Allegation that R&A Misrepresented Compliance with Loss Mitigation*

Benjamin claims that R&A misrepresented the status of her debt in another way as well: by failing to comply with requirements set forth in the deed to her loan, regulations, RESPA, and other D.C. law, Dkt. 23 at 8 (Am. Compl. ¶ 36), including loss mitigation requirements. Benjamin does not claim that these shortcomings themselves violated the FDCPA; rather, she contends that R&A misrepresented its clients' non-compliance, and this misrepresentation constituted an FDCPA violation.  R&A argues in response that Benjamin "fails to provide any evidence or any specific allegations of how [R&A] allegedly misrepresented the legal status of the debt." Dkt. 26 at 7.

Although Benjamin was not required to marshal her evidence at the pleading stage, the Court agrees that her complaint is deficient.  Notably, beyond the alleged misrepresentations that

the Court has already concluded survive R&A's motion to dismiss, the complaint provides no factual allegations elucidating this claim.  It does not identify what specific misrepresentations R&A allegedly made, when and to whom it made those misrepresentations, or how they caused Benjamin compensable injury.  And this section of Benjamin's complaint is not only conclusory, it is too vague to permit R&A to offer a considered response.  One is simply left to guess what "HUD regulations" or D.C. law requirements for "clean hands" or "good faith" Benjamin has in mind.  More is required to state a claim in federal court.  *See Iqbal*, 556 U.S. at 678.

The Court will, accordingly, dismiss Benjamin's FDCPA claim relating to R&A's alleged misrepresentations concerning "compliance with DOT, HUD regulations, RESPA loss mitigation requirements[,] and District of Columbia's requirement that Defendants have clean hands and act in good faith in the loss litigation process," Dkt. 23 at 8 (Am. Compl. ¶ 36).

> 5.    *Allegation that R&A Threatened to Take Action that Could Not Legally Be Taken*

Finally, Benjamin alleges that R&A's notification of the foreclosure sale violated 15 U.S.C. § 1692e(5), which prohibits debt collectors from threatening "to take any action that cannot legally be taken."  Dkt. 23 at 8 (Am. Compl. ¶ 34).  In particular, she contends that R&A "threaten[ed] to sell [her] property at a foreclosure sale when [it] knew [that it] had no right to conduct the sale."  *Id.*  R&A responds that because it "was operating pursuant to a court order that specifically granted judgment," its actions with respect to the foreclosure sale could not have contravened the FDCPA.  Dkt. 26 at 6.

The Court agrees with R&A.  As the complaint acknowledges, R&A notified Benjamin of the scheduled foreclosure sale only after obtaining the Superior Court's order and before that order was vacated.  Dkt. 23 at 5 (Am. Compl. ¶ 19).  To be sure, the complaint contends that R&A "obtained summary judgment [based] on misrepresentations to the Superior Court."  *Id.*

But on that theory, it is R&A's underlying misrepresentations that violated the FDCPA, not the actions that followed in compliance with the court order.  Section 1692e(5) precludes actions "that cannot legally be taken."  But an action taken in compliance with an order issued by a court of competent jurisdiction is lawful unless and until the order is modified or set aside.  And, once again, to the extent Benjamin's claim is premised on R&A's alleged misrepresentations regarding the lawful note holder and her efforts to effect a short sale, her claim merely repeats the two claims that the Court has already declined to dismiss.

The Court will therefore dismiss Benjamin's FDCPA claim based on R&A's "threat[]" to sell her property pursuant to the Superior Court's foreclosure decree, Dkt. 23 at 8 (Am. Compl. ¶ 34).

## CONCLUSION

The Court, accordingly, will **GRANT** in part and **DENY** in part R&A's motion to dismiss, Dkt. 25.

It is hereby **ORDERED** that R&A's motion to dismiss Benjamin's claims (1) that R&A misrepresented the status of the debt by pursing foreclosure on behalf of entities that allegedly were not holders of the note and lacked standing to foreclose, and (2) that R&A misrepresented aspects of the attempted short-sale is **DENIED**; it is further

**ORDERED** that R&A's motion to dismiss Benjamin's claims (1) that R&A attempted to collect "illegal or unreasonable" fees or costs; that (2) R&A misrepresented its clients' compliance with the deed to the loan, regulations, RESPA, and other D.C. law; and that (3) R&A threatened to sell Benjamin's property even though R&A could not legally take that action is **GRANTED** and that those claims are hereby **DISMISSED** for failure to state a claim upon which relief can be granted; and it is further

**ORDERED** that Benjamin's claims (1) that R&A failed to bring the foreclosure action in its own name, or in Selene's name, and (2) that R&A unlawfully communicated directly with Benjamin regarding the scheduled foreclosure are hereby **DISMISSED** for lack of subject matter jurisdiction.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 26, 2021