**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| MELISSA AKAR BENJAMIN, |
| *Plaintiff*, |
| v. |
| ROSENBERG & ASSOCIATES, |
| *Defendant*. |

Civil Action No. 19-3012 (RDM)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Melissa Akar Benjamin brings this suit under the Fair Debt Collection Practices Act ("FDCPA" or the "Act") to challenge the legality of certain statements that a law firm, Rosenberg & Associates ("R&A"), made in a foreclosure action before the D.C. Superior Court. Benjamin contends that R&A violated the FDCPA's prohibition on using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, when it made false representations to the D.C. Superior Court concerning its client's status as the "holder" of the promissory note pertaining to her mortgage, and false representations to the Superior Court about Benjamin's participation (or lack thereof) in a short sale process intended to avert foreclosure. *See* Dkt. 23 at 8 (Am. Compl. ¶¶ 35, 38); Dkt. 40 at 18–22. R&A has moved for summary judgment as to both of these claims, Dkt. 49.

For the reasons that follow, the Court will **GRANT** R&A's motion for summary judgment, Dkt. 49. A separate order will issue.

## I. BACKGROUND

For purposes of resolving the motion for summary judgment, the Court reviews "the facts in the record and all reasonable inferences derived therefrom in a light most favorable" to the

nonmoving party.  *Coleman v. Duke*, 867 F.3d 204, 209 (D.C. Cir. 2017) (quoting *Al-Saffy v. Vilsack*, 827 F.3d 85, 89 (D.C. Cir. 2016)).  Here, the nonmoving party is Benjamin.  That said, in opposing R&A's motion for summary judgment, Benjamin did not comply with Local Civil Rule 7(h)(1)'s requirement that "[a]n opposition to . . . a motion [for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  Nor did she comply with this Court's standing order, which (1) cautions the parties that "[t]he Court strictly adheres to the dictates of Local Civil Rule 7(h);" (2) requires that "[a] party opposing [a] motion [for summary judgment] submit a statement enumerating all material facts which the party contends are disputed;" (3) directs that a "party responding to a statement of material facts . . . respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied" and including "specific citations to the record;" (4) requires a party relying on "additional factual allegations" in opposing a motion for summary judgment to include those factual assertions in "a responsive statement;" and (5) stresses that "[t]he Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such facts are controverted in the statement filed in opposition to the motion."  Dkt. 7 at 4.

Instead, Benjamin filed a "Notice of Table of Contents," which she labeled in her docket entry as "Statement of Facts Statement of Genuine Facts in Dispute."  *See* Dkt. 54.  The document that is attached, in turn, is her Table of Authorities.  Dkt. 54-1.  It goes without saying that these submissions do not satisfy Rule 54, Local Civil Rule 7(h), or this Court's standing order; the attachment does not identify or dispute a single fact.  Although one might wonder

whether counsel might have inadvertently attached the incorrect document to his filing, R&A brought Benjamin's omission to the attention of the Court and opposing counsel in its reply brief, and, although he has had ample opportunity to do so, Benjamin's counsel has never suggested that he inadvertently filed the wrong document.  Benjamin's opposition brief, moreover, does not cite to a statement of disputed facts, confirming that counsel simply failed to prepare or to submit one.  Because Benjamin has ignored Rule 7(h) and this Court's admonition that it will strictly apply the Rule; because her counsel has made no effort to correct her omission despite ample opportunity to do so; and because she is represented by experienced counsel, the Court concludes that her omission is "egregious."  *Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002).

The D.C. Circuit "has long upheld strict compliance with" Local Civil Rule 7(h) and has permitted this Court to accept "as true [a] movant's properly supported statement of material facts not in dispute where the opposing party failed" "egregious[ly]" "to submit a counterstatement."  *Id.*  The Court could thus treat all properly supported facts contained in Defendant's statement of undisputed material facts as conceded.  The Court will not take that severe step here, however.  Mindful of the Court's obligation to "always determine for itself whether the record and any undisputed material facts justify granting summary judgment," *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505, 507 (D.C. Cir. 2016) (quotation omitted), the Court will not disregard specific evidence, if any, that Benjamin has clearly identified in her opposition brief as responsive to a particular statement of material fact set forth in R&A's Rule 7(h) statement.  But where Benjamin fails to do so—that is, where she fails to identify specific evidence (not merely argument) that controverts R&A's properly supported description of

events—the Court will rely on R&A's uncontroverted statement of material facts and the evidence proffered in support of that statement.

Against this backdrop, the Court will rely on the following facts, derived from R&A's statement of undisputed material facts and from a review of the evidence cited with sufficient precision in Benjamin's opposition brief. Moreover, consistent with Rule 56, the Court will construe the facts in the light most favorable to Benjamin, as the nonmoving party. The Court will not, however, "sift through" the record "in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact." *Burke*, 286 F.3d at 518 (citation and quotation marks omitted).

## A.   Factual Background

For many years, Benjamin resided at and owned the property located at 4407 Foote Street NE in Washington, D.C. ("the property"). Dkt. 23 at 2 (Am. Compl. ¶ 6); Dkt. 49-1 at 1 (Def.'s SUMF ¶ 2). In September 2009, she refinanced the property and obtained a loan from Village Capital & Investment, LLC ("Village"), secured by the property. Dkt. 23 at 2 (Am. Compl. ¶ 6); Dkt. 49-1 at 1 (Def.'s SUMF ¶ 3). In exchange for the loan, Benjamin executed a promissory note (the "Note"), Dkt. 49-5 at 1 (dated September 29, 2009), and a deed of trust ("Deed of Trust"), Dkt. 49-3 at 15 (dated September 29, 2009), that functioned as the security instrument for the Note. *See also* Dkt. 23 at 2 (Am. Compl. ¶ 6); Dkt. 49-1 at 1 (Def.'s SUMF ¶ 4). The Note states that the amount of the loan was $226,597 and that Benjamin would be in default if she failed to pay in full any monthly payment. Dkt. 49-3 at 1–3; Dkt. 55-4 at 9–11. The Deed of Trust also provides that Benjamin would be in default if she failed to make any monthly payment, Dkt. 49-3 at 18; Dkt. 55-4 at 20, and it states that in the event of default, Village or its successors and assignees "may invoke the power of sale and any other remedies permitted by

applicable law," Dkt. 49-3 at 19–20; Dkt. 55-4 at 21–22.  Benjamin failed to make any payments

on the loan from May 1, 2011 to August 2020, when the loan was repaid in full as part of a

foreclosure settlement.  Dkt. 49-4 at 1; Dkt. 49-1 at 2 (Def.'s SUMF ¶ 7).

On November 16, 2016, Christiana Trust, a division of Wilmington Savings Fund

Society, FSB ("WSFS"), filed a judicial foreclosure action against Benjamin in D.C. Superior

Court.  Dkt. 49-3 at 1.  The Superior Court complaint alleges that Christiana Trust was acting as

"trustee for Sunset Mortgage Loan Trust, Series 2014-2" ("Sunset"), which had "[t]hrough a

series of assignments" been "assigned [the] rights under the Note and Deed of Trust" relating to

Benjamin's 2009 loan from Village.  Dkt. 49-3 at 1–2.  Attached to that complaint was a copy of

the deed for the property, *id.* at 10, the original Note accompanied by an allonge that showed that

the Note had been endorsed to the Bank of America, N.A, *id.* at 11–14; Dkt. 49-1 at 2 (Def.'s

SUMF ¶ 10), and the Deed of Trust accompanied by a series of documents that showed it had

been assigned to Christiana Trust, as trustee for Sunset, Dkt. 49-3 at 15–31; Dkt. 49-1 at 2–3

(Def.'s SUMF ¶¶ 11–17).  The foreclosure complaint further alleged that Selene Finance, LP, the

authorized servicer of the loan, had mailed Benjamin a "demand letter stating the total amount

needed to cure the default," but that Benjamin failed to cure the default and that, as a result,

Christiana Trust was seeking to foreclose on the property.  Dkt. 49-3 at 2–3; *id.* at 33–34

(demand letter dated May 5, 2014).  R&A was acting as plaintiff's counsel in this foreclosure

action.  Dkt. 49-3 at 1; Dkt. 49-1 at 4 (Def.'s SUMF ¶¶ 20–21).  "At the time the foreclosure

action began, Sunset was the holder of the Note and the beneficial interest in the Deed of Trust."

Dkt. 49-1 (Def.'s SUMF ¶ 23) (citing verified foreclosure complaint, Christina Trust allonge,

and assignment of deed); *see also id*. (Def.'s SUMF ¶ 22) ("Sunset, through its agent, executed the foreclosure complaint under penalty of perjury.").[1]

On April 28, 2017, the D.C. Superior Court entered a default judgment against Benjamin in the foreclosure action. Dkt. 49-7 at 3. Four months later, on August 18, 2017, the Superior Court held a status hearing on the matter. *Id.*; Dkt. 49-1 at 4 (Def.'s SUMF ¶ 24). At that hearing, Benjamin, proceeding *pro se*, moved to vacate the default judgment, representing that she "ha[d] a buyer for the short sale on her property," but she needed to "sign a listing agreement" with an agent and to agree to a "vacate date." Dkt. 49-7 at 3; Dkt. 49-1 at 4 (Def.'s SUMF ¶ 25). After R&A agreed that Benjamin's representations were correct and agreed to a continuance, the Superior Court continued the matter for sixty days. Dkt. 49-7 at 3; Dkt. 49-1 at 4 (Def.'s SUMF ¶ 26).

Several months passed during which the Superior Court held two status conferences, but no short sale occurred. *See* Dkt. 49-7 at 4 (status hearing held on October 20, 2017, where Benjamin said that "she ha[d] not heard anything from the company that represents the servicer" but that she had "several potential buyers;" R&A represented that "there [was] a requirement for [a] listing agreement for a short sale"); *id.* (status hearing held on January 26, 2018, where Benjamin informed the court that she was "in the process of listing the Property as a short sale" and R&A stated that "they [were] waiting for the final report of appraisal"). By April 17, 2018,

---

[1] In her opposition brief, Benjamin argues that Sunset was not the holder of the Note when the foreclosure suit was filed. For support, she cites to testimony from R&A's corporate designee regarding the designee's inability to speak to whether possession of the Note was physically transferred to certain entities. *See* Dkt. 53 at 13. For the reasons that the Court will explain, *see* Part III.C, to refute R&A's statement of undisputed material facts, Benjamin must do more than speculate about the lack of evidence supporting Sunset's claim to be the holder of the Note; she must point to evidence to the contrary, which she does not do. Accordingly, the Court accepts R&A's assertion from its statement of undisputed material facts regarding Sunset's status as holder of the Note.

however, the impasse appeared to end.  That day, a listing agent emailed the Caneel Group, which was "act[ing] as the agent for the lender for the purposes of the short sale review," Dkt. 49-8 at 2; Dkt. 49-1 at 5 (Def.'s SUMF ¶ 27), with the "highest offer to date" for the property and sought approval to proceed with a sale, Dkt. 49-9 at 9–10.

A representative from the Caneel Group promptly responded to the listing agent's email by asking for more information to consider the offer.  *Id.* at 8.  Benjamin resisted Caneel's request for more information, stating that "[a]s far as [she] c[ould] tell, [she and her agent] ha[d] met [their] legal obligations to date."  *Id.* at 7–8.  Thereafter, the parties corresponded about the terms of the "best and final" offer the agent had received, which did not match the documents that had been provided to Caneel.  *Id.* at 4–7.  These issues appear to have been resolved over the following two weeks, and on May 3, 2018, a representative from Caneel emailed Benjamin's listing agent, Benjamin, and R&A to inform them that an offer on the property had been approved.  *Id.* at 2; Dkt. 49-1 at 5 (Def.'s SUMF ¶ 34).  Caneel also informed those on the email that approval of the offer would expire on May 30, 2018, a date that "must be adhered to with all parties aware in advance."  Dkt. 49-9 at 1–2.

The Superior Court held another status hearing on May 11, 2018.  Dkt. 49-7 at 4; Dkt. 49-1 at 6 (Def.'s SUMF ¶ 35).  At that hearing, Benjamin notified the court that she was "unable to keep the property as she has been unemployed for some time" but that she had received six to seven offers for the property.  Dkt. 49-7 at 4; Dkt. 49-1 at 6 (Def.'s SUMF ¶ 36).  R&A conveyed that if the short sale was completed, it "anticipate[d] dismissal;" otherwise, it "intended to file a motion for summary judgment."  Dkt. 49-7 at 4; Dkt. 49-1 at 6 (Def.'s SUMF ¶ 37).  The court set a further status hearing for July.  Dkt. 49-7 at 4.

Despite the optimism of the communications regarding the short sale in early May, the buyer was unable to close prior to the May 30 deadline.  One day before the short-sale deadline, Benjamin emailed Selene, the servicer of the loan, to notify Selene that that the buyer had a "closing date" of June 18, 2018, and sought permission to push back the May 30 deadline until that time.  Dkt. 49-10 at 2–3; Dkt. 49-1 at 6 (Def.'s SUMF ¶ 38).  It appears that Benjamin's request was approved.  Dkt. 49-7 at 4.  But then, on June 4, 2018, Chester Katz, title counsel at the Capitol Title Insurance Agency, Inc., notified Caneel, Selene, and R&A that it was his understanding that there was a defect with Benjamin's title to the property that he expected would "take several months" to cure.  Dkt. 49-10 at 1; Dkt. 49-1 at 6 (Def.'s SUMF ¶ 39).

On July 12, 2018, R&A moved for summary judgment in the foreclosure action.  Dkt. 49-7 at 4; Dkt. 49-1 at 6 (Def.'s SUMF ¶ 41).  The following day, the D.C. Superior Court held a status hearing, as previously scheduled.  At that hearing, Benjamin informed the court that she was still "pursuing the short sale; however, approval on the contract [had] expired."  Dkt. 49-7 at 4.  Benjamin also told the court that the sale of the property had been unable to close "because of an issue with the legal description of the property" and that she "intend[ed] to work with an attorney to clear [the] title issues."  *Id.*; Dkt. 49-1 at 6 (Def.'s SUMF ¶ 43).  In response, R&A notified the court that it "believe[d] that the title [to the property was] clear, but that there [was] a title insurance issue."  Dkt. 49-7 at 4; Dkt. 49-1 at 7 (Def.'s SUMF ¶ 44).  The court set a further status hearing for October and set a briefing schedule for the pending summary judgment motion.  Dkt. 49-7 at 4.

On July 19, 2018, Katz emailed "all parties who [he could] identify as having been involved" in the pending short sale, including representatives from R&A.  Dkt. 49-11 at 1; Dkt.

49-1 at 7 (Def.'s SUMF ¶ 45).  In that email, Katz expressed concern with the representations

that R&A had made to the D.C. Superior Court in the July 13 hearing.  He wrote:

> I was quite taken aback by the email below from Ms. Benjamin, advising that an
> attorney from foreclosure firm Rosenberg & Associates had represented to the
> court that there is a clear title to this property.[2]  If this is indeed what happened,
> said attorney needs to correct her representation to the court.  I was under the
> impression that Selene Financial was instructing Rosenberg & Associates to
> make a title claim on their loan title policy, because the defective title would
> preclude the trustees of the deed of trust from delivering good title at the
> foreclosure.

 Dkt. 49-11 at 1.  He provided the recipients of his email with several documents and concluded

by noting that "[w]ith the possible exception of the attorneys at Rosenberg & Associates,

everyone should at this point in time have a good understanding of the title problem."  *Id.*

The next correspondence in the record concerning the title issue occurs on July 27, 2018.

At that time, an employee of the D.C. Department of Insurance, Securities, and Banking emailed

Katz and Benjamin to inform them that "[t]he legal description of Ms. Benjamin's deed is

correct" and that "[t]he District will not change her property's legal description."  Dkt. 49-12 at

1–2; Dkt 49-1 at 7 (Def.'s SUMF ¶ 46).  It does not appear that this information was

immediately conveyed to R&A.  As a result, on August 30, 2018, R&A filed a title claim for the

title issue, on behalf of Selene, with the Old Republic National Title Insurance Company.  Dkt.

49-13 at 1; Dkt. 49-1 at 7 (Def.'s SUMF ¶ 47).  The claim appears to raise the same issue with

---

[2] Benjamin's email that Katz referenced stated that R&A had "claim[ed]" at the July 13 hearing
"that there is clear title on the property" and asked when closing could occur if that was indeed
the case.  Dkt. 49-11 at 2.

the property description in the deed that Benjamin and Katz had raised to the D.C. government. Dkt. 49-13 at 1.

On September 24, 2018, Benjamin informed Selene that the D.C. government had notified her that there was no issue with the description of her property in her deed.  Dkt. 49-12 at 1; Dkt. 49-1 at 7 (Def.'s SUMF ¶ 48).  And on October 3, 2018, the Old Republic National Title Insurance Company informed R&A of its conclusion to the same effect.  Dkt. 49-13 at 1 ("[W]e have concluded that the above referenced issue does not affect the title and you are free to continue with your foreclosure as is."); Dkt. 49-1 at 7 (Def.'s SUMF ¶ 49).

With the title issue having been resolved, the parties once again began the process of pursuing a short sale.  Dkt. 49-14 at 1; Dkt. 49-1 at 7–8 (Def.'s SUMF ¶ 50).  On October 11, 2018, a representative from Selene emailed Benjamin to inform her that it was "now able to move forward with a [s]hort [s]ale on this account" and asked Benjamin to "submit [the] highest and best offer" she had so that the Selene employee could "submit [it] to the investor for review and consideration."  Dkt. 49-14 at 1; Dkt. 49-1 at 7–8 (Def.'s SUMF ¶ 50).  The following day, the D.C. Superior Court held a status hearing on the foreclosure case as planned.

At that hearing, Benjamin notified the court that she had "been attempting a short sale" but "that her efforts to do a short sale have been delayed by Plaintiff's failure to respond."  Dkt. 49-7 at 5; Dkt. 49-1 at 8 (Def.'s SUMF ¶¶ 51, 52).  She explained that she had "recently relisted the property and received her first offer."  Dkt. 49-7 at 5.  The court was not persuaded to continue the matter further, however, and indicated that it would grant R&A's pending motion for summary judgment in a subsequent order.  *Id.*; Dkt. 49-1 at 8 (Def.'s SUMF ¶ 53).  The order

issuing judgment in R&A's client's favor was issued on October 31, 2018.  Dkt. 49-7 at 5; Dkt. 49-1 at 8 (Def.'s SUMF ¶ 54).

Benjamin subsequently hired counsel and moved to alter or amend the order granting summary judgment.  Dkt. 49-7 at 5; Dkt. 49-1 at 8 (Def.'s SUMF ¶ 55).  She argued that "the Plaintiff has unclean hands and does not qualify for equitable relief of foreclosure," in part due to the actions R&A's client had taken (or failed to take) during the short sale, and that "the Plaintiff lacks standing to sue because Plaintiff has failed to proffer any admissible evidence that it is in possession of the original Note nor prove that it was in possession of the original Note at the commencement of this suit."  Dkt. 49-17 at 1.  R&A opposed the motion on behalf of its clients, *see generally* Dkt. 49-15, and Benjamin replied with "specific examples of claims of unclean hands by Plaintiff," Dkt. 49-17 at 2.

On March 19, 2019, the D.C. Superior Court granted Benjamin's motion and vacated its October 31, 2018 order.  Dkt. 49-1 at 9 (Def.'s SUMF ¶ 59).  The court recognized "that this matter has been pending for nearly three years" and that "[a]ny further delay in the proceedings would be prejudicial to the Plaintiff," but it found that "the facts of this case reflect diligent efforts on the part of [Benjamin] to resolve this matter" and that granting the motion would "allow[] the issues presented in [Benjamin]'s motion to be more thoroughly explored."  Dkt. 49-17 at 2.

On May 25, 2019, Benjamin moved to dismiss the foreclosure action against her for lack of subject matter jurisdiction, and the D.C. Superior Court denied that motion on July 19, 2019. Dkt. 49-7 at 67.  The case proceeded to discovery, Dkt. 49-1 at 9 (Def.'s SUMF ¶ 60), and then to mediation, Dkt. 49-7 at 7–9.  The parties reached a settlement agreement, pursuant to which the loan was paid in full and the Deed of Trust was released.  Dkt. 49-1 at 10 (Def.'s SUMF

¶ 69–70).  On September 16, 2019, the foreclosure action was dismissed by consent of the parties.  Dkt. 49-7 at 9.

## B.    Procedural History

Following the resolution of the foreclosure action in D.C. Superior Court, Benjamin turned the tables on those who had sought to foreclose against her and filed this action on October 8, 2019, against R&A, Selene, and WSFS (of which Christiana Trust was alleged to be a part).  *See generally* Dkt. 1 (Compl.).  Benjamin's amended complaint asserted six claims under federal and D.C. law against the three defendants, but only the claim against R&A remains.[3]  Dkt. 23 at 7–9 (Am. Compl. ¶¶ 30–40).

On March 6, 2020, R&A moved to dismiss the amended complaint, Dkt. 25, which Benjamin opposed, Dkt. 32.[4]  On August 19, 2020, the Court held a status conference, at which the parties explained that "the Superior Court case[,] for the most part[,] ha[d] been resolved in a settlement" and that Benjamin would "pay the underlying loan on that case."  At the parties' request, the Court stayed the case while Benjamin and R&A attempted to resolve their disputes.  Min. Entry (Aug. 19, 2020).  After that effort proved unfruitful, Dkt. 36; Oct. 15, 2020 Hrg. Tr. (Rough at 11); Min. Entry (Oct. 15, 2020), Benjamin and R&A informed the Court that they wished to proceed with litigation, Dkt. 39.

On August 26, 2021, the Court granted in part and denied in part R&A's motion to dismiss.  Dkt. 40.  Surviving dismissal was Benjamin's claim that R&A had violated the FDCPA

---

[3] Benjamin voluntarily dismissed her claims against Selene, Dkt. 29, and WSFS, Dkt. 33.

[4] Benjamin also moved at that time for partial summary judgment, Dkt. 34.  The Court denied Benjamin's motion for partial summary judgment without prejudice for failure to comply with the Court's standing order, requiring that parties participate in a pre-motion conference, Min. Order (Aug. 5, 2020).

by (1) "misrepresent[ing] the status of the debt [and] pursuing foreclosure on behalf of entities that allegedly were not holders of the note and lacked standing to foreclose;" and (2) by "misrepresent[ing] aspects of the attempted short sale." *Id.* at 25.

Following discovery, R&A moved for summary judgment with respect to both alleged misrepresentations, Dkt. 49. Benjamin opposes the motion, Dkt. 53.

## II. LEGAL STANDARD

Summary judgment is warranted if a party can "show[ ] that there is no genuine dispute as to any material fact and [that the party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The movant "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), even when viewed in the light most favorable to the nonmoving party, *see Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). This standard, however, should not be construed "to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof." *Durant v. D.C. Gov't*, 875 F.3d 685, 696 (D.C. Cir. 2017) (quoting *Celotex*, 477 U.S. at 325). Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving party's favor with respect to the "element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  The nonmoving party's opposition, accordingly, must consist of more than unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.  That is, once the moving party carries its initial burden on summary judgment, the nonmoving party must provide evidence that would permit a reasonable jury to find in its favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  If the nonmoving party's evidence is "merely colorable" or "not significantly probative," the Court should grant summary judgment in favor of the nonmoving party.  *Liberty Lobby*, 477 U.S. at 249–50.

### III. ANALYSIS

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers."  15 U.S.C. § 1692(e).  To that end, the Act "regulates interactions between consumer debtors and debt collectors," *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010), and prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e.  To hold a defendant liable under § 1692e, a private plaintiff must establish that: (1) the defendant is a "debt collector;" (2) who took an action "in connection with the collection of any debt;" and (3) the action violated

14

§ 1692e's substantive proscriptions.  *Muldrow v. EMC Mortg. Corp.*, 657 F. Supp. 2d 171, 174–75 (D.D.C. 2009).

R&A does not dispute that, at least for present purposes, it is a "debt collector" within the meaning of the FDCPA.  *See* Dkt. 49-2 at 13.  But R&A does maintain that no reasonable jury could find in Benjamin's favor on the remaining two elements.  First, R&A contends that its initiation of a foreclosure action in the D.C. Superior Court was not "an action taken in connection with the collection of a[] debt" because the foreclosure action sought to enforce a security interest.  *Id.* at 14.  Next, R&A argues that it did not violate the substantive provisions of the FDCPA because the allegedly deceptive statements it made were made to a court in the course of a judicial proceeding, which R&A contends falls outside of the scope of the Act.  *Id.* at 14–18.  Finally, R&A argues that even if the FDCPA applies to the statements it made to the D.C. Superior Court in the foreclosure proceeding, those statements were not false or misleading and Benjamin's claim fails for that reason as well.  *Id.* at 18–20.

As explained below, the Court agrees with R&A that the evidence in the record falls short of what is necessary for a reasonable jury to find that the statements R&A made in the foreclosure action were materially false or misleading.  Accordingly, the Court will grant R&A's motion for summary judgment, and it need not reach the remainder of R&A's arguments and the thorny issues they present.

## A.    Least Sophisticated Debtor Standard

Benjamin claims that R&A violated § 1692e of the FDCPA, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e; *see also id.* § 1692e(10) (prohibiting "the use of any false representation or deceptive means to collect or attempt to collect any debt or to

obtain information concerning a consumer").  Although § 1692e enumerates sixteen categories

of conduct that qualify as "false, deceptive, or misleading," that list is not exhaustive and

conduct not covered by any one of those categories may still violate the Act.  To determine

whether a debt collector's conduct falls afoul of § 1692e, courts consider whether "the least

sophisticated debtor would likely be misled by a communication."  *Donohue v. Quick Collect,*

*Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Guerrero v. RJM Acquisitions LLC*, 499 F.3d

926, 934 (9th Cir. 2007)); *see also Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98,

103 & n.4 (1st Cir. 2014); *Jacobson v. Healthcare Financial Servs., Inc.*, 516 F.3d 85, 90 (2d

Cir. 2008); *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *Powell v. Palisades*

*Acquisition XVI, LLC*, 782 F.3d 119, 126 (4th Cir. 2014); *McMurray v. ProCollect, Inc.*, 687

F.3d 665, 669 (5th Cir. 2012); *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509 (6th

Cir. 2007); *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006)

(adopting similar "unsophisticated debtor" standard); *Strand v. Diversified Collection Service,*

*Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (same); *Crawford v. LVNV Funding, LLC*, 758 F.3d

1254, 1258 (11th Cir. 2014).[5]

Although the least-sophisticated-debtor standard is intended to protect "all consumers,

including the inexperienced, the untrained and the credulous," *Pollard*, 766 F.3d at 103 (quoting

*Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997)); *Jones*, 830

---

[5] Although the D.C. Circuit has never directly addressed the standard that applies to determine what is "misleading" under the FDCPA, in *Jones v. Dufek,* 830 F.3d 523, 525 n.2 (D.C. Cir. 2016), the Circuit affirmed this Court's application of the least-sophisticated-debtor standard to grant summary judgment to the defendant.  Because this standard is more favorable to Benjamin than a reasonable-debtor standard, the Court need not consider whether the text and purpose of the FDCPA supports application of the least-sophisticated-debtor standard in general or on the facts of this case.  *See Tourgeman v. Collins Financial Servs., Inc.,* 755 F.3d 1109, 1119 (9th Cir. 2014) (explaining that the least-sophisticated-debtor standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor").

F.3d at 525 n.2, the generosity afforded to even the least sophisticated consumer has limits. "[T]he basic goal [of the FDCPA] is to prevent debt collectors from deceiving naive consumers, but not to hold collectors liable simply because their letter may be deceptive under 'bizarre or idiosyncratic consumer interpretations.'" *Jones*, 830 F.3d at 525 n.2 (quoting *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)); *Pollard*, 766 F.3d at 104 ("A debt collector will not be held liable based on an individual consumer's chimerical or farfetched reading of a collection letter."); *Tourgeman*, 755 F.3d at 1119 ("Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable." (internal quotation marks and citation omitted)); *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) ("This standard recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices.").  The standard is further tempered, moreover, by the application of some form of a materiality requirement—that is, "a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor; in other words, it must be material when viewed through the least sophisticated debtor's eyes." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) (emphasis omitted); *see also Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757–758 (7th Cir. 2009); *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015); *Donohue*, 592 F.3d at 1033–34; *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Jensen*, 791 F.3d at 417–18 ("No Circuit Court that has addressed this issue has disagreed with *Hahn* and held that an immaterial false statement made during the collection of a consumer debt is actionable under the FDCPA."); *see, e.g., Hahn*, 557 F.3d at 757–58 (finding

17

that a collection letter that attributed too little of the amount a debtor owed to interest did not violate the FDCPA because it "would not mislead the unsophisticated consumer, . . . even if it is false in some technical sense;" "[a] dollar due is a dollar due" and whereas "[a]pplying an incorrect rate of interest would lead to a real injury," "reporting interest in one line item rather than another (or in two line items) harms no one").

Benjamin claims that R&A's statements in its foreclosure complaint and proceeding were materially false and misleading.  Because Benjamin argues that R&A's misstatements to the D.C. Superior Court (rather than statements made directly to Benjamin, personally, in, for example, a collection letter) violate the FDCPA, her allegations are different from the mine run of statements that are challenged under that Act.  Courts are divided about whether such statements, that is those directed to a court rather than to a consumer, fall within the FDCPA's protections.  *See Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1295 (11th Cir. 2015) (finding that "documents filed in court in the course of judicial proceedings to collect on a debt, like [the debt collector's] sworn reply, are subject to the FDCPA"); *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 176 (3d Cir. 2015) (finding that the contents of foreclosure complaints can be the subject of FDCPA claims); *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818–19 (8th Cir. 2012) (finding that alleged false statements in summary judgment pleadings were outside of the scope of the FDCPA); *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 939 (7th Cir. 2011) ("The [FDCPA] regulates communications directed at the consumer; . . . it does not extend to communications that are allegedly meant to mislead the judge in a state court action."); *cf. Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229 (4th Cir. 2007) (rejecting a debt collector's argument that it had common law immunity from an FDCPA claim premised on statements it made in court).  But this Court need not weigh into that dispute because, even

18

assuming that the statements Benjamin challenges here could violate § 1692e, R&A has carried its burden of showing that no reasonable jury could find that the statements were materially false or misleading, and Benjamin has failed to identity any evidence that might give rise to a triable issue of fact.

In briefing this issue, neither party argues that the standard that should apply to determine whether the statements made to the D.C. Superior Court violate § 1692e is something other than the least-sophisticated-debtor standard. Dkt. 53 at 4–5. That is, neither party argues that the standard should vary from the least-sophisticated-consumer standard to something else depending on to whom the debt collector directs the allegedly misleading or false statement. Nor would an alternative rule make much sense in the context of the purposes of the FDCPA. As it has often been noted, the FDCPA is "an explicitly remedial statute, passed by Congress 'to eliminate abusive debt collection practices by debt collectors.'" *Jensen*, 791 F.3d at 418 (quoting 15 U.S.C. § 1692(e)); *accord Sheriff v. Gillie*, 578 U.S. 317, 320 (2016). It thus "regulates interactions between consumer debtors and debt collectors." *Jerman*, 559 U.S. at 577. A rule, such as the least-sophisticated-debtor standard, that places consumer perceptions at its center is consistent with that purpose; a rule that places other types of actors, such as judges, at its center does not. There are other regulatory schemes that aim to dissuade parties from making false representations to the court or in judicial proceedings; the FDCPA is not one of them. *Cf. Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 476 (2019) (recognizing that although Congress intended to protect consumers from unscrupulous debt collection practices, Congress did not intend to do so in every forum where such abuse occurs; those who regularly enforce security interests only are not debt collectors for the purposes of the FDCPA). The FDCPA is concerned with ensuring that representations made directly or (perhaps, as alleged here)

indirectly to consumers are not materially false or misleading; the least-sophisticated-debtor standard serves that purpose.

Considering the record with the least-sophisticated-debtor standard in mind and in light of the uncontroverted facts, the Court concludes R&A has shown that no reasonable jury could find that R&A's statements were materially false or misleading.

## B.   Misrepresentations About the Short Sale

Benjamin's first FDCPA claim alleges that R&A made a series of misrepresentations to the D.C. Superior Court in the foreclosure action that allowed R&A to "obtain[] summary judgment on the false basis that [R&A and its client] operated in good faith to process the short-sale and that [Benjamin] failed to find an acceptable buyer."  Dkt. 23 at 4 (Am. Compl. ¶ 13). Specifically, Benjamin contends that:

> Defendant R&A misrepresented to the Superior Court, both verbally at hearings and in writing via court filings, that the lender operated in good faith and that Ms. Benjamin failed to take appropriate action to complete the short sale.  More specifically, in R&A's Opposition to Benjamin's Motion to Alter or Amend (filed December 12, 2018), on page 4, R&A blamed Benjamin for not completing the short sale.
>
> And in Court Hearing on May 11, 2018, R&A's attorney, Tracy Buck, misrepresented to the Court that Selene had authorized a short sale amount [ ] and that Ms. Benjamin had not received offers to sell the property.  And again, on July 13, 2018, R&A's attorney, Tracy Buck, misrepresented to the Court at a Hearing that Benjamin was making illegitimate excuses for not selling the property when R&A knew there were title issues outside of Ms. Benjamin's control that w[ere] causing the property not to sell.

Dkt. 49-4 at 3 (interrogatory response).  Benjamin thus challenges statements relating to the short sale that R&A made (or allegedly made) at three different points in the foreclosure litigation: (1) statements at the May 11, 2018 status conference; (2) statements in the July 13, 2018 status

conference; and (3) statements in R&A's opposition brief filed after the D.C. Superior Court had entered summary judgment against Benjamin.[6]

Considering the May 11 statements first, the Court concludes that Benjamin has failed to identify any record support that R&A made false or misleading representations at this hearing. Benjamin argues that at a status hearing held on May 11, 2018, R&A informed the court, allegedly incorrectly, that Selene, R&A's client, had authorized a short sale and that Benjamin had not received any offers to sell the property. The only evidence that either side offers regarding what was said at that hearing is found in the Superior Court docket entry for the May 11, 2018 hearing, and that entry contradicts the (unverified) interrogatory's account of what occurred. That entry states:

> Status Hearing Held (Courtsmart) Ms. Mirza present for Plaintiff. Defendant Benjamin present *pro se*. Plaintiff has a pending motion to substitute as the investor has changed. Defendant states that she is unable to keep the property as she has been unemployed for some time. She has listed the property for sale and received 6–7 offers. Plaintiff anticipates a dismissal if the short sale is completed. Otherwise, Plaintiff intends to file a motion for summary judgment. The Court will issue an order from Chambers ruling on the motion to substitute. Case is set for further status on 7/13/18 at 2:00 p.m.

Dkt. 49-7 at 4. There is nothing in this entry that suggests that R&A represented to the Superior Court that "Benjamin had not received offers to sell the property," Dkt. 49-4 at 3; indeed, the

---

[6] The Court notes that in her opposition to R&A's motion for summary judgment, Benjamin neglects to respond to R&A's argument that it did not make any materially misleading statements to the D.C. Superior Court about the short sale. That could be a basis for this Court to treat R&A's arguments regarding the short-sale statements as conceded. *See Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) ("It is well established that if a [party] fails to respond to an argument raised in a motion for summary judgment it is proper to treat that argument as conceded."); *Mosleh v. Howard Univ.*, No. 19-cv-339, 2022 WL 898860, at *15 (D.D.C. Mar. 28, 2022) (same). But "in view of the severity of dismissal of a potentially meritorious claim," *Burke*, 286 F.3d at 518, the Court draws from Benjamin's interrogatory responses and other evidence in the record to determine both what Benjamin's claim is and whether it can survive summary judgment.

entry notes, without contradiction, that she had "received 6-7 offers."  Moreover, although the entry does not state that Selene had "authorized a short sale amount" as Benjamin contends, the only relevant evidence in the record shows that, if such a statement was made at the hearing, it would have been true.  Emails provided by R&A show that Caneel, Selene's agent for the purposes of the short sale, Dkt. 49-8 at 2, had approved an offer to sell the property at a loss on May 3, 2018, Dkt. 49-9 at 2, approximately one week prior to the May 11 hearing.  R&A, for its part, has offered evidence to support its contention that shortly before the May 11 hearing, "the Caneel Group emailed all parties to inform them that a short sale offer had been approved with an expiration date of May 30, 2018," Dkt. 49-1 at 5 (Def.'s SUMF ¶ 34), and Benjamin has failed to offer any evidence to the contrary.

Benjamin's next contention—that at the July 13, 2018 hearing, R&A "misrepresented . . . that Benjamin was making illegitimate excuses for not selling the property when R&A knew there were title issues outside of . . . Benjamin's control that w[ere] causing the property not to sell," Dkt. 49-4 at 3—fares no better.  To be sure, the record provides some support for the notion that the parties had differing views or were confused about what was delaying the short sale.  The docket entry for the July 13 status hearing notes that while Benjamin informed the Superior Court "of an issue with the legal description of the property," R&A stated that it "believe[d] that the title [to the property was] clear, but that there [was] a title insurance issue." Dkt. 49-7 at 4.  And following this hearing, Katz, Benjamin's title counsel, emailed R&A about the conflicting views presented at that court hearing. Dkt. 49-11 at 1.  But the record contains no support for Benjamin's contention that R&A represented that Benjamin was "making illegitimate excuses" or that there was no title-related issue at all.  At most, the record supports the conclusion that R&A mistakenly informed the court that Benjamin's title was clear (or at least

that counsel "believe[d]" it was clear) but that there was a title insurance issue that was delaying

the sale.  To the extent such a statement can be fairly characterized as false, it cannot be

characterized as material.  A material statement is one that impacts the decision-making process

of the least sophisticated consumer.  *Jensen*, 791 F.3d at 421.  But it is unclear how a statement

that a short sale cannot be completed due to a *title insurance* issue rather than merely a *title* issue

materially impacts the decision-making process of the least sophisticated debtor.[7]  Nor does

Benjamin explain how that would be the case.

It appears from the record, moreover, that the defect at issue was one that was discovered

by Benjamin's representative during a step in the process that appears to have been her

responsibility; as a result, Benjamin had special knowledge of this issue.  She then brought it to

the attention of the Superior Court to explain the delay in the short sale.  Even though R&A's

response to Benjamin's description of the title defect was arguably incomplete or incorrect, that

response would not have deceived even the least sophisticated debtor because it was the least

sophisticated debtor who raised the issue in the first place and who had knowledge of the issue.

The purpose of the FDCPA is to remedy information asymmetry between the ordinary debtor

and the debt collector, the latter party often having the informational advantage; but in a situation

in which the debtor is uniquely positioned to have more information than the debt collector, it

would make little sense for the debtor to be able to sue the debt collector for making

misstatements that the debtor knows to be false.

---

[7] Notably, two weeks after the status hearing, Katz was informed by the D.C. Department of
Insurance, Securities, and Banking that, in fact, "there was no title issue and . . . that legal
description [of] the . . . [p]roperty was correct."  Dkt. 49-1 at 7 (Def.'s SUMF ¶ 46); *see also*
Dkt. 49-12 at 1–2.

Finally, Benjamin alleges that R&A made false statements about the short sale in its opposition to Benjamin's motion to amend or to alter the judgment entered against her in the foreclosure action.  Benjamin contends that R&A wrongly "blamed Benjamin for not completing the short sale" in this document.  Dkt. 49-4 at 3.  But the page to which Benjamin cites argues only that:

> Plaintiff [to the foreclosure action] cannot be blamed for Benjamin's inability to execute a short-sale because Plaintiff is not required to accept payoffs short of the balance it is owed.  Despite this, Plaintiff has prosecuted its foreclosure proceeding in good faith, and substantively reviewed and approved short-sales that Benjamin was ultimately unable to complete settlement for.

Dkt. 49-15 at 4.  After reading this passage several times, the Court is left at a loss as to what in it is even arguably false, nor has Benjamin offered any help.  The uncontroverted record shows that R&A's client did "review[] and approve[] [the] short sale[,] Dkt. 49-9; Dkt. 49-10; Dkt. 49-14, and that (at least at that time R&A filed its opposition brief) Benjamin "was ultimately unable to complete [the] settlement" of a short sale, Dkt. 49-7 at 4–5*;see Hemmingsen*, 674 F.3d at 819 ("It was not false or misleading to submit a client affidavit and legal memorandum arguing [the law firm's client']s legal position that [the debtor] was liable for the unpaid account balance;" "[t]he fact that a state court judge rejected the contention . . . does not prove that those assertions were false or misleading for purposes of § 1692e.").

For these reasons, the Court concludes that R&A has carried its summary judgment burden of demonstrating that, based the uncontroverted evidence, no reasonable jury could grant relief in Benjamin's favor with respect to any statements R&A made in the Superior Court action regarding the short sale.  *See Hedgeye Risk Mgmt., LLC v. Heldman*, 412 F. Supp. 3d 15, 22–23 (D.D.C. 2019) ("The non-movant's opposition . . . must consist of more than mere denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific

facts showing that there is a genuine issue for trial.").  The Court, accordingly, will grant R&A's

motion for summary judgment as to this portion of Benjamin's FDCPA claim.

**C.**     ***Misrepresentations About the "Holder" of the Note***

Benjamin also alleges that R&A violated the FDCPA because it "falsely represented that

[its clients] were note holders."  Dkt. 53 at 6 (capitalization altered).  Although "holders" of a

note are entitled to bring a judicial foreclose proceeding, a "non-holder" can do so under limited

circumstances, *see* D.C. Code § 28:3-301; *Taylor v. Wells Fargo Bank, N.A.*, 85 F. Supp. 3d 63,

70 (D.D.C. 2015).  Here, Benjamin contends that R&A falsely represented in the foreclosure

litigation that its clients held the Note at issue, Dkt. 53 at 6–19, and that this misrepresentation

was material because the firm's clients had no right to foreclose in the manner they chose

because they were not "holders" of the Note, *id.* at 20.

The factual premise of this argument is difficult to square with the record.  R&A states in

its statement of undisputed material facts that its clients were the holders of the Note at the

relevant times during the foreclosure action, and it offers substantial documentary evidence in

support of this assertion.  To begin with, as R&A notes, the verified complaint in the foreclosure

action avers that at the time the firm filed the foreclosure case, Sunset was, in fact, the holder of

the Note and the beneficiary of the Deed of Trust.  Dkt. 49-1 at 4 (Def.'s SUMF ¶ 23).  The

verified complaint states that Sunset is "the current holder of the Note and beneficiary of the

Deed of Trust."  Dkt. 49-3 at 2.  The verified complaint further explains that Sunset became the

holder "[t]hrough a series of assignments" in which "the original Lender assigned its rights under

the Note and Deed of Trust to" Sunset.  *Id.*  As the D.C. Circuit has observed, a verified

complaint "functions as an affidavit when it meets the standards of" what is now Rule 56(c)(4).

*Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992).  "A formal affidavit," moreover, "is no longer

required," since 28 U.S.C. § 1746 "allows a written unsworn declaration, certificate, verification, or statement subscribed in the proper form as true under penalty of perjury to substitute for an affidavit." Fed. R. Civ. P. 56, 2010 amend. note. Benjamin fails to offer any *evidence* controverting the sworn averments contained in the verified complaint.[8]

R&A has also submitted ample documentary evidence showing that, at the time R&A filed the foreclosure complaint, Sunset was, in fact, the holder of the Note and the beneficiary of the Deed of Trust. An allonge attached to the Note lists "Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Sunset Mortgage Loan Trust, Series 2014-2." Dkt. 49-5 at 6. An assignment dated April 30, 2014, moreover, shows that the Deed of Trust was assigned to "Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, as Trustee for Sunset Mortgage Loan Trust, Series 2014-2." Dkt. 49-3 at 31.

During the course of the foreclosure action, the Note and the Deed of Trust were assigned once more, causing R&A to move to substitute the new holder of the Note and beneficiary of the Deed of Trust, Normandy Mortgage Loan Trust, Series 2017-2, for Sunset. Dkt. 49-1 at 5 (Def.'s SUMF ¶¶ 31–33). R&A has provided documentary evidence of this transfer as well. *See* Dkt. 49-5 at 7–11 (allonges to Note); Dkt. 49-6 at 12-14 (assignment of Deed of Trust).

Benjamin, in turn, fails to respond to Defendant's statement of material facts and offers no controverting evidence regarding the ownership of the Note and assignment of the Deed of

---

[8] The closest Benjamin comes to controverting these sworn averments is her unsupported assertion that "[t]he Note attached to the complaint is not admissible because the person verifying the complaint was not competent to establish the Note was valid." Dkt. 53 at 16. But she fails to offer any evidence to back up this assertion, nor does she explain why the Assistant Vice President of Selene Finance LP, acting as "Attorney-in-Fact" for Sunset, Dkt. 49-3 at 9, was "not competent to establish" the validity of the Note, Dkt. 53 at 16. Moreover, although all agree that the version of the Note attached to the foreclosure complaint lacked all of the relevant allonges, Benjamin never contests the sworn averment in the complaint regarding Sunset's status as the "current holder of the Note and beneficiary of the Deed of Trust." Dkt. 49-3 at 2.

Trust.  Nor does Benjamin, in opposing the motion for summary judgment, so much as suggest

that some other entity is waiting in the wings to demand payment at some point in the future.  To

the contrary, she admits that she has now paid the full loan amount, the Note has been satisfied,

and the Deed of Trust was released after payment was made to R&A's client.  Dkt. 49-9 at 1.

In the absence of any proof that supports her view that Sunset was not the holder of the

Note, Benjamin attempts to forestall summary judgment by raising a series of questions—and to

be clear, they are just questions, with no evidentiary support—concerning the legitimacy of

Sunset's status as a holder.  Benjamin argues, for example, that Sunset was not a "person"

because there is no evidence indicating whether it was a valid trust.  She also argues that R&A

has not shown that it knew whether or not Sunset physically possessed the Note at the time the

foreclosure action was brought, notwithstanding the averment in the verified complaint, made

under penalty of perjury, that Sunset was the holder of the Note and the evidence that shows that

R&A, in fact, had received copies of the Note from its client.

This, however, is not the place to relitigate the Superior Court action.  The sole question

for present purposes is whether Benjamin has responded to R&A's summary judgment showing

by identifying "any false, deceptive, or misleading representation or means" that R&A employed

"in connection with the collection of any debt."  15 U.S.C. § 1692e.  And, for the reasons

explained above, she has not.  Given R&A's substantial evidentiary showing, it is now

Benjamin's burden to show "that the materials cited do not establish the absence . . . of a genuine

dispute."  Fed. R. Civ. P. 56(c)(1)(B).  It is, in other words, her burden to provide evidence from

which a reasonable jury could find that, despite the averments contained in the verified

complaint, and despite the allonges and assignments R&A has produced, Sunset was not the

holder of the Note and that R&A affirmatively misled her (or possibly others) into thinking the

27

opposite.  Rather than do so, Benjamin has raised only a series of "what-if" arguments that, if accepted, would create a never-ending burden on a party moving for summary judgment to respond to every imaginable (and unsupported) legal defense or theory.  *See Durant*, 875 F.3d at 696; *Celotex*, 477 U.S. at 325; *Muldrow*, 657 F. Supp. 2d at 174–75 (elements of an FDCPA claim).

It is for this reason that the cases Benjamin cites for the proposition that a "plaintiff can challenge the defendant's attempt to collect on a note" are inapposite.  Dkt. 53 at 19.  That high-level proposition is not what is at issue.  A debtor can, of course, raise some arguments about why she is not required to pay the sum sought by the debt collector in an action to collect on a debt.  In a FDCPA case, however, the ultimate burden is on the plaintiff to identify a materially false statement made by the debt collector.  At the summary judgment stage, this means that after the defendant-movant has proffered evidence rebutting the purported falsehoods that the plaintiff has identified in discovery, the plaintiff then bears the burden of identifying conflicting evidence that would permit a reasonable jury to find in her favor.

Finally, to the extent Benjamin challenges the transfer of the Note and Deed of Trust to Sunset (and subsequently to Normandy) on the ground that these transfers were not made by an authorized person, *see* Dkt. 53 at 15–16, that is not Benjamin's argument to make.  As this Court has already explained in its opinion granting in part and denying in part R&A's motion to dismiss, "merely alleging that a foreclosure plaintiff did not have standing to initiate a foreclosure action is not enough to state a claim under Section 1692e."  Dkt. 40 at 18.  This is because a statement is only material for purpose of the FDCPA "if it has the potential to affect the decision-making process of the least sophisticated debtor."  *Jensen*, 791 F.3d at 421.  But "an individual who is not a party to, or an intended beneficiary of, an assignment agreement lacks

standing to challenge the validity of the assignment." *Rivera v. Rosenberg & Associates, LLC*, 142 F. Supp. 3d 149, 155 (D.D.C. 2015); s*ee also Mushala v. US Bank, Nat'l Ass'n*, No. 18-cv-1680, 2019 WL 1429523, at *7 n.9 (D.D.C. Mar. 29, 2019); *Bank of New York Mellon Trust Co. N.A. v. Henderson*, 107 F. Supp. 3d 41, 45 (D.D.C. 2015).  Here, Benjamin does not dispute that she failed to make payments on her loan, that the parties to the foreclosure action "reached an agreement to resolve the . . . matter," that "[t]he loan was subsequently paid in full and the Deed of Trust [was] released," and that the foreclosure case was, accordingly, dismissed in September 2020.  Dkt. 49-1 at 2, 10 (Def.'s SUMF ¶¶ 7, 69–71).  Under these circumstances, any contention that the payment was made to the wrong beneficiary is not Benjamin's argument to make.  *See Mushala*, 2019 WL 1429523 at *7 n.9 ("This standing principle 'has been applied specifically in the FDCPA context; to preclude similar allegations to those [the debtor] brings against defendants here, including that 'loan processing companies and law firms . . . violated the FDCPA by fabricating mortgage assignments, fraudulently endorsing affidavits, and backdating mortgage transfers, in order to initiate foreclosure actions on behalf of trusts that otherwise lacked standing to foreclose.'" (quoting *Rivera*, 142 F. Supp. 3d at 155)).

The Court, accordingly, will grant R&A's motion for summary judgment as to this portion of Benjamin's FDCPA claim alleging that R&A misrepresented that Sunset (and then Normandy) was the holder of the Note and beneficiary of the Deed of Trust.

**CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendant R&A's motion for

summary judgment, Dkt. 49.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 13, 2024